# In the United States District Court for the Southern District of Georgia Brunswick Division

AUTO-OWNERS INSURANCE COMPANY,

    Plaintiff,

    v.                                      No. 5:20-CV-108

AMERSON ENTERPRISES INC.,
JOHNNY AMERSON, LOYD AMERSON,
WILLIAM AMERSON, and JANET
SMITH,

    Defendants.

## ORDER

Before the Court is Plaintiff's Motion for Summary Judgment. Dkt. No. 19-3. For the reasons stated below, Plaintiff's motion is **GRANTED.**

## BACKGROUND

This is a declaratory judgment action seeking a determination of Plaintiff's liability to Defendants in an underlying state court personal injury suit. The parties include Plaintiff Auto-Owners Insurance Company ("Plaintiff"); Defendants Amerson Enterprises Inc. ("Amerson Enterprises"), Johnny Amerson ("Johnny"), Loyd Amerson ("Loyd"), William Amerson ("William") (collectively, the "Amerson Defendants"); and Defendant Janet Smith ("Smith"). Dkt. No. 1 at 1.

On January 6, 2020, Defendant Janet Smith went to Amerson Tire Company[1] in Douglas, Georgia, where she was involved in an altercation with Defendants Loyd and William Amerson (the "Incident"). Dkt. No. 19-6 ¶ 5; see also Dkt. No. 1-2 at 1 (police report's showing incident location as 609 SW Bowens Mill Road, Douglas, Georgia). Smith alleges that when she arrived to discuss an issue about her daughter's bill,[2] Loyd pushed her up against a wall. Id. ¶ 6; Dkt. No. 1-2 at 2. Smith claims that when she then attempted to sit down in a chair, William kicked the chair out from underneath her, causing her to fall to the floor and become injured. Dkt. No. 1-2 at 2.[3] Loyd and William dispute this account of the Incident; Loyd denies ever having placed a hand on Smith, and William denies kicking Smith's chair. See, e.g., Dkt. No. 19-9 at 8-10 (Loyd's account of the Incident); Dkt. No. 19-10

---

[1] Amerson Tire Company is a separate entity from Defendant Amerson Enterprises, but both are owned by the Amersons. See Dkt. No. 19-11 at 4-5, 15 (Johnny's stating that he owns 100 percent of Amerson Tire Company, which is a tire retail store, and that he and his two sons, Loyd and William, each own one-third of Amerson Enterprises). Amerson Enterprises is a residential property rental company, and it does not seem to have a brick-and-mortar location. See id. at 5.

[2] For context, Loyd sells and finances cars through a separate business. Dkt. No. 19-9 at 6. Smith's daughter, Haley, was making payments on a car she bought from Loyd, and Loyd alleges Haley was behind on these payments. Id. Johnny saw Smith at a convenience store shortly before the Incident and told Smith that her daughter was behind on her car payments and that she could talk to Loyd about it. Dkt. No. 19-10 at 9-10. This is apparently why Smith came to Amerson Tire Company on January 6, 2020. Id.

[3] Johnny was present for some part of the Incident, but it is unclear which portions. See id. (Smith's claiming that she asked Johnny to call 911 after she fell); Dkt. No. 19-11 at 11-12 (Johnny's denying that he saw Smith fall or was present for the aftermath at all).

(William's account of the Incident).   Loyd and William suggest that Smith accidentally bumped the chair out from underneath her as she started to sit down and the chair rolled away, which caused her to fall.   See Dkt. No. 1-2 at 4.   Loyd admits that he and Smith got in a heated argument, and it is undisputed that he texted Smith later that day to apologize.   Id. at 3; Dkt. No. 19-9 at 13.

At some point that day, the police were contacted; an officer spoke with Smith at her residence that afternoon, during which Smith told the officer her account of the Incident.   Dkt. No. 1-2 at 1, 3.   The officer then traveled to Amerson Tire.[4]   Id. at 4. The officer told Loyd that Smith had reported that Loyd and William had assaulted her, and Loyd told the officer his account of the Incident.   Id.   Johnny was also at Amerson Tire when the officer arrived, but Johnny told the officer he "hadn't seen anything." Dkt. No. 19-11 at 13.[5]

On May 29, 2020, Smith filed suit in the Superior Court of Coffee County, Georgia, against Amerson Tire Company, Johnny, Loyd, and William (the "Underlying Lawsuit").   Dkt. No. 19-6 ¶ 10. Smith asserts causes of action for assault, battery, intentional

---

[4] It is unclear whether the officer came to Amerson Tire the same day—January 6th—or the next, January 7th.   See Dkt. No. 1-2 at 4.

[5] At some point, Loyd received Smith's medical bills in the mail; Loyd "felt like [they] weren't responsible," so he did not pay them.   Dkt. No. 19-9 at 13. It is unclear whether Loyd received these bills before or after Smith filed suit.

and negligent infliction of emotional distress, negligence, and vicarious liability; she seeks damages for medical expenses, pain and suffering, and lost wages, as well as punitive damages and attorneys' fees.  Id. ¶ 12.

Amerson Enterprises held an insurance policy with Plaintiff for the period of November 10, 2019 to November 10, 2020 (the "Policy").  Id. ¶ 1.  The Policy provides, in relevant part, that Plaintiff will pay the sums its insured becomes legally obligated to pay as damages and will defend its insured in a suit seeking damages for bodily injury caused by an "occurrence."  Id. ¶ 2. The Policy defines an occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  Id.  The Policy also provides:

> **SECTION VI – WHAT YOU MUST DO AFTER AN ACCIDENT, OCCURRENCE OR LOSS**
>
> A. You must see to it that we are notified as soon as practical of an occurrence or an offense which may result in a claim. To the extent possible, notice should include:
>
>> 1. How, when and where the occurrence or offense took place;
>>
>> 2. The names and addresses of any injured persons and witnesses; and
>>
>> 3. The nature and location of any injury or damage arising out of the occurrence or offense.

Id. ¶ 3; Dkt. No. 1-1 at 34.  Finally, the Policy provides that "[n]o person or organization has a right under this policy . . .

[t]o sue [Plaintiff] on this policy unless all of its terms have been fully complied with."  Dkt. No. 19-6 ¶ 4.

It is undisputed that Defendants did not notify Plaintiff of the Incident or the Underlying Lawsuit until June 15, 2020, when Amerson Enterprises submitted a claim to Plaintiff for defense and indemnification in connection with the Underlying Lawsuit.  Id. ¶ 13.  Although Johnny, Loyd, and William each own one-third of Amerson Enterprises, Loyd is the only one responsible for dealing with insurance matters.  Id. ¶¶ 16, 17.  Neither Johnny nor William did anything to notify Plaintiff of the Incident before June 15, and Loyd did not notify Plaintiff of the Incident before then, either.  Id. ¶¶ 18-20.  Loyd testified that he received the Policy but did not read it, and he did not know he was supposed to notify Plaintiff of incidents that may result in claims.  Id. ¶ 19.  On June 25, 2020, Plaintiff sent a reservation of rights letter to Amerson Enterprises, in which it stated:

> We wish to advise you we are proceeding to investigate this claim under a reservation of rights. Auto-Owners Insurance Company reserves all rights and defenses which it has in connection with this policy. Any activity on our part by way of investigation and/or settlement which we may undertake does not constitute a waiver of any of our rights.
>
> We received the claim on June 15, 2020, over five months after the incident occurred. This delay in reporting may have jeopardized our ability to conduct a proper investigation. You are also required to cooperate with the investigation of your claim. Failure to do so may result in the denial of your claim. This matter is still being investigated but based on the facts and

circumstances known at this time there does not appear to be an "occurrence" as defined by the policy. Additionally, the policy specifically excludes Bodily Injury or Property Damage that is expected or intended. We ask that you provide any evidence, videos, photos, internal reports, etc. you may have concerning this incident.

. . .

All rights, terms, condition, and exclusions in your policy are in full force and effect and are completely reserved. No action by any employee, agent, attorney or other person on behalf of Auto-Owners Insurance Company, or hired by Auto-Owners Insurance Company on your behalf, shall waive or be construed as having waived any right, term, condition, exclusion or any other provision of the policy

Id. ¶ 14; Dkt. No. 1-5 at 4.

Plaintiff filed this action against Smith and the Amerson Defendants on August 18, 2020, seeking a declaratory judgment that it has no duty to defend or indemnify the Amerson Defendants in the Underlying Lawsuit. Dkt. No. 1 at 14. Smith filed a timely answer, but the Amerson Defendants have submitted neither an answer nor any other filings despite their having been served with the summons and complaint on August 25, 2020. Dkt. No. 19-6 ¶¶ 24-26; Dkt. No. 6. Plaintiff filed the subject Motion for Summary Judgment on March 1, 2021. Dkt. No. 19-3. The issues have been fully briefed, dkt. nos. 26, 30, and the Court held oral argument on the Motion on August 27, 2021. The Motion is now ripe for review.

**LEGAL STANDARD**

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" where the evidence would allow "a reasonable jury to return a verdict for the nonmoving party." FindWhat Inv. Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A fact is "material" only if it "might affect the outcome of the suit under the governing law." Id. (quoting Anderson, 477 U.S. at 248). Factual disputes that are "irrelevant or unnecessary" are insufficient to survive summary judgment. Anderson, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant must show the court that there is an absence of evidence to support the nonmoving party's case. See id. at 325. If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. See Anderson, 477 U.S. at 257.

The nonmovant may satisfy this burden in one of two ways. First, the nonmovant "may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict

motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting Celotex Corp., 477 U.S. at 332 (Brennan, J., dissenting)).  Second, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117.  Where the nonmovant attempts to carry this burden with nothing more "than a repetition of his conclusional allegations, summary judgment for the [movant is] not only proper but required." Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981) (citing Fed. R. Civ. P. 56(e)).

## DISCUSSION

In its Motion, Plaintiff argues it is entitled to summary judgment because the Amerson Defendants "failed to comply with a condition precedent to coverage by failing to give timely notice of the occurrence at issue." Dkt. No. 19 at 1.  Smith, however, contends summary judgment is inappropriate because questions of fact remain.  Dkt. No. 26 at 6.  The Amerson Defendants have neither appeared nor responded.

To start, Plaintiff effectively reserved its rights to contest its duty to Defendants because it "fairly inform[ed] the [Amerson Defendants] that, notwithstanding [Plaintiff's] defense of the action, it disclaims liability and does not waive the

defenses available to it against the [the Amerson Defendants]."
Hoover v. Maxum Indem. Co., 730 S.E.2d 413, 416 (Ga. 2012)
(quoting World Harvest Church, Inc. v. Guideone Mut. Ins. Co., 695
S.E.2d 6 (Ga. 2010)) (emphasis removed); Dkt. No. 1-5 at 4.
Plaintiff's reservation of rights letter informed Defendants of
"the specific 'basis for [Plaintiff's] reservations about
coverage,'" namely, the Amerson Defendants' failure to provide
timely notice. See World Harvest, 695 S.E.2d at 10 (quoting Jacore
Sys., Inc. v. Cent. Mut. Ins. Co., 390 S.E.2d 876, 878 (Ga. Ct.
App. 1990)); Dkt. No. 1-5 at 4 ("We received the claim on June 15,
2020, over five months after the incident occurred. This delay in
reporting may have jeopardized our ability to conduct a proper
investigation.").

It is undisputed that timely notice is a condition precedent
under the Policy. See Dkt. No. 19-6 ¶ 3; Dkt. No. 27 ¶ 3.
Plaintiff contends the Amerson Defendants failed to comply with
this condition precedent by failing to notify Plaintiff of the
January 6, 2020 Incident until over five months after its
occurrence. Dkt. No. 19-7 at 13–14. Plaintiff points out the
Amerson Defendants knew the Incident "was severe enough to warrant
police involvement"; Loyd knew that Smith "told the police that
Loyd . . . and William . . . had assaulted her"; and the Amerson
Defendants' only justification for their delay in providing notice

was Loyd's statement "that he did not know he was supposed to." Id. at 14–15.

In response, Smith argues "questions of fact remain[] as to whether . . . the [Amerson] Defendants had reason to know that they would be held liable for the offense in question" and "whether the five (5) month delay between the occurrence and notice was reasonable." Dkt. No. 26 at 6.[6]  Smith contends she failed to "g[i]ve any indication to [the Amerson] Defendants that she intended to sue or take any further action" after the Incident occurred and "Smith['s] filing the lawsuit was simply unforeseeable," such that the five-month delay in notice was not unreasonable.  Id. at 4–5.

Under Georgia law, "[t]he purpose of a notice provision in a policy of insurance is to allow the insurer to investigate promptly the facts surrounding the occurrence and to prepare a defense or determine whether a settlement is feasible, while the facts are still fresh and the witnesses are still available." Hyde v. State Farm Mut. Auto. Ins. Co., 848 S.E.2d 145, 148 (Ga. Ct. App. 2020) (quoting Plantation Pipeline Co. v. Royal Indem. Co., 537 S.E.2d 165, 169 (Ga. Ct. App. 2000)).  Of course, "an insured is not

---

[6] Smith also argues there is an issue of fact as to "whether the thirteen (13) day delay between service of the lawsuit and notice was reasonable.  Id. However, this is not an issue before the Court: Plaintiff does not contend the Amerson Defendants provided untimely notice of the Underlying Lawsuit; instead, it contends they provided untimely notice of the Incident itself.  See Dkt. No. 30 at 2–5.

'required to foresee every possible claim, no matter how remote,' that might arise from an event and give notice of it to his insurer." Forshee v. Emps. Mut. Cas. Co., 711 S.E.2d 28, 31 (Ga. Ct. App. 2011) (quoting Guaranty Nat'l Ins. Co. v. Brock, 474 S.E.2d 46, 48 (Ga. Ct. App. 1996)). Instead, "the law only requires an insured 'to act reasonably under the circumstances.'" Id. (quoting Guaranty Nat'l Ins. Co., 474 S.E.2d at 48). Georgia courts look to "the nature and circumstances of . . . 'the incident' and the immediate conclusions an ordinarily prudent and reasonable person would draw therefrom" to "determine whether an insured has reasonably justified his decision not to notify the insurer." S. Guar. Ins. Co. v. Miller, 358 S.E.2d 611, 612 (Ga. Ct. App. 1987). "Relevant circumstances include the nature of the event, the extent to which it would appear to a reasonable person in the circumstances of the insured that injuries or property damage resulted from the event, and the apparent severity of any such injuries or damage." Forshee, 711 S.E.2d at 31. "[T]he issue of whether notice is timely and meets the policy provisions is usually a question of fact for the jury. Unexcused significant delay, however, may be unreasonable as a matter of law." Hyde, 848 S.E.2d at 148 (quoting Advoc. Networks, LLC v. Hartford Fire Ins. Co., 674 S.E.2d 617, 619 (Ga. Ct. App. 2009)).

Based on the undisputed evidence, "an ordinarily prudent and reasonable person" would have notified their insurer of the January

6, 2020 Incident.  To start, the Amerson Defendants knew that Smith fell to the floor while in their office that day; both Loyd and William witnessed her fall.  See Dkt. No. 19-9 at 9–10; Dkt. No. 19-12 at 7.  Further, Loyd testified that he texted Smith after the Incident "to apologize."  Dkt. No. 19-6 ¶ 9.  Most detrimental to Smith's argument that a jury question exists regarding the foreseeability of liability is that a police officer *came* to Amerson Tire, spoke with Loyd about what happened, and *told* Loyd that Smith claimed he and William had assaulted her.  Id. ¶¶ 7–8; compare, e.g., Forshee, 711 S.E.2d at 32–33 (remanding case to determine reasonableness of failure to notify where customer fell in a parking lot, the insured's employees did not see the fall, the customer refused medical assistance and walked back to her car, and insured had no way of identifying or contacting her) with Maryland Cas. Co. v. Salon Ave. Suite 2, No. 1:13-CV-3056-TWT, 2014 WL 4925623, at *4 (N.D. Ga. Sept. 29, 2014) (holding the insured "knew or reasonably should have known" a civil claim could arise where police were involved and the insured sought liability releases from and apologized to the aggrieved parties).  Defendant Smith's assertion that the lawsuit was "simply unforeseeable" is patently undermined by the undisputed facts.  The Amerson Defendants knew or should have known that the Incident "*may* result in a claim," and they were therefore obligated to notify Plaintiff

"as soon as practical" of the Incident; this, they failed to do. Dkt. No. 1-1 at 34 (emphasis added).

Without a valid justification,[7] the Amerson Defendants' five-month delay in providing notice to Plaintiff is unreasonable as a matter of law.  "Courts applying Georgia law have held that delays of as little as three to four months preclude recovery as a matter of law." Allstate Ins. Co. v. Airport Mini Mall, LLC, 265 F. Supp. 3d 1356, 1378 (N.D. Ga. 2017) (citations omitted)); see also, e.g., Diggs v. S. Ins. Co., 321 S.E.2d 792, 793 (Ga. Ct. App. 1984) (three months' delay unreasonable as a matter of law); Hathaway Dev. Co. v. Ill. Union Ins. Co., 274 F. App'x 787, 790-91 (11th Cir. 2008) (per curiam) (delays of four, five, and eight months unreasonable as a matter of law); LeBlanc, 494 F. App'x at 23 (four-month delay unreasonable as a matter of law); Advoc. Networks, 674 S.E.2d at 619 (same); Cotton States Mut. Ins. Co. v. Int'l Surplus Lines Ins. Co., 652 F. Supp. 851, 856 (N.D. Ga. 1986) ("Georgia courts have repeatedly held that where no valid excuse exists, failure to give written notice for periods in the range of four to eight months is unreasonable as a matter of law.").

---

[7] As Plaintiff points out, failure to read the Policy does not excuse the Amerson Defendants' failure to comply with its conditions precedent. See Dkt. No. 19-7 (citing State Farm Fire & Cas. Co. v. LeBlanc, 494 F. App'x 17, 23 (11th Cir. 2012)).

The Amerson Defendants' unjustified failure to notify Plaintiff of the Incident until over five months after its occurrence is unreasonable as a matter of Georgia law and constitutes failure to comply with a condition precedent to the Policy's coverage. Because Plaintiff has no duty to defend or indemnify the Amerson Defendants in the Underlying Lawsuit, Plaintiff's Motion for Summary Judgment, dkt. no. 19-3, must be **GRANTED**.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment, dkt. no. 19-3, is **GRANTED**. The Clerk is **DIRECTED** to enter judgment for Plaintiff and **CLOSE** this case.

**SO ORDERED**, this 31st day of August, 2021.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA